IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHASE ODEGAARD, | ) |
| Plaintiff, | ) |
| v. | ) No. 24-cv-01121 |
| BAYERISCHE MOTOREN WERKE AG, et al., | ) Judge Andrea R. Wood |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chase Odegaard was driving his BMW when he was involved in a motor vehicle collision that caused his driver's side airbag to deploy. Odegaard claims that the airbag exploded upon deployment due to a defect in its inflator, and as a result, he sustained severe injuries after being struck by shrapnel. For that reason, Odegaard has brought the present action asserting products liability claims against the manufacturer of his BMW, Defendant Bayerische Motoren Werke AG ("BMW AG"), and its U.S. distributor, Defendant BMW of North America, LLC ("BMW NA"). Now, BMW AG moves to dismiss the claims against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons that follow, BMW AG's motion is denied.

**BACKGROUND**

As alleged in the First Amended Complaint ("FAC"), Odegaard owned a 2014 BMW X3 that was designed and manufactured by BMW AG, a German company, and imported into the U.S. and sold to U.S. customers by BMW NA. (FAC ¶¶ 1–2, 6, 17–18, 22–25, Dkt. No. 26.)[1] On

---

[1] For present purposes, the Court summarizes the factual allegations of the complaint but, of course, does not vouch for their veracity in doing so.

October 23, 2023, Odegaard was driving his BMW in Illinois when his vehicle collided with another. (*Id.* ¶¶ 1, 13(k), 58–60.) The impact of that collision caused the vehicle's driver's side airbag to deploy. (*Id.* ¶ 1, 59.) Upon deployment, the BMW's airbag exploded and metal projectiles from the explosion struck Odegaard, causing him severe physical injury. (*Id.* ¶¶ 1, 60.)

As the manufacturer of Odegaard's vehicle, BMW AG approved and selected its airbag system. (*Id.* ¶¶ 23–24, 39–41.) However, the system in Odegaard's vehicle was defective because its airbag-inflator component used an ammonium-nitrate based propellant. (*Id.* ¶¶ 45–49.) Ammonium nitrate is a volatile and unstable chemical compound that, in certain conditions, presents a risk of explosion. (*Id.* ¶¶ 48–49.) Even before Odegaard's October 2023 accident, both BMW AG and BMW NA were aware of numerous incidents where occupants of their vehicles had been injured as a result of airbag inflators using an ammonium-nitrate-based propellant. (*Id.* ¶¶ 51, 53.) Nonetheless, neither Defendant issued a recall for Odegaard's BMW. (*Id.* ¶ 56.) Because of the severe injuries he suffered from his BMW's defective airbag system, Odegaard brought the present action asserting products liability and negligence claims against both BMW AG and BMW NA.

## DISCUSSION

BMW AG contends that it is a German-based business that is not subject to personal jurisdiction in Illinois. A motion to dismiss under Rule 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but once the defendant moves to dismiss the complaint . . . for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (internal quotation marks omitted).

When a court rules on a Rule 12(b)(2) motion based on the parties' submission of written materials without holding an evidentiary hearing, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks omitted). In considering the motion, any well-pleaded facts alleged in the complaint are taken as true and any factual disputes in the affidavits are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Still, where the defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true. *Id.*

Because it is sitting in diversity, the Court looks to Illinois's long-arm statute to determine whether BMW AG is subject to personal jurisdiction here. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). The long-arm statute allows for the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. 735 ILCS 5/2-209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Thus, the question before the Court is whether BMW AG has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction can be general or specific. Odegaard, however, does not contend that this Court may exercise general jurisdiction over BMW AG, so the Court limits its inquiry to whether Odegaard has shown that this Court may exercise specific jurisdiction over BMW AG.

3

That inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Specifically, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702. Thus, there is specific jurisdiction where "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* In addition, the exercise of jurisdiction "must also comport with traditional notions of fair play and substantial justice." *Id.*

BMW AG argues that it is a German company with its principal place of business in Germany and lacks sufficient minimum contacts with Illinois to be subject to specific jurisdiction in this case. To support its personal jurisdiction challenge, BMW AG submits a declaration from two of its in-house counsels. (BMW AG's Mot. to Dismiss, Ex. C, Decl. of Holldobler and Krause, Dkt. No. 27-3.) That declaration affirms that BMW AG is an automobile, motorcycle, and engine manufacturing "Aktiengesellschaft"—a publicly traded German stock company—that designed Odegaard's BMW in Germany. (*Id.* ¶¶ 4–5.) It goes on to state that BMW AG does not conduct its manufacturing and design activities in Illinois, is not qualified to do business in Illinois, has no agent for service of process in Illinois, and does not make direct sales of its vehicles to dealers or customers in Illinois. (*Id.* ¶¶ 5, 13–15, 17–18.)

Instead, BMW AG's vehicles are sold and advertised to dealers and customers in the U.S. by its indirect subsidiary and the exclusive U.S. distributor of BMW-brand vehicles, BMW NA. (*Id.* ¶¶ 8, 12, 16.) BMW NA is a Limited Liability Company formed under Delaware law with its principal place of business in New Jersey and is a separate and distinct legal entity with four intermediary entities between it and BMW AG. (*Id.* ¶¶ 8–11.) Further, BMW AG does not have

4

any significant involvement in directing or managing BMW NA's business. (*Id.* ¶¶ 4, 10–11.) Finally, BMW AG's declaration emphasizes that once it sells a BMW vehicle to BMW NA, BMW AG relinquishes all ownership and control over that vehicle. (*Id.* ¶ 12.)

While Odegaard largely accepts the facts set forth in BMW AG's declaration, he nonetheless contends that BMW AG purposefully availed itself of doing business in Illinois by placing its vehicles into the stream of commerce knowing that they would reach customers in Illinois. The "stream-of-commerce" theory of purposeful availment is drawn from the Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980), where it suggested that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Subsequent Supreme Court opinions have called the theory's viability into question, but no majority decision has squarely repudiated it. *JST Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); and *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102 (1987)). Thus, the Seventh Circuit applies the stream-of-commerce theory in products liability cases like the one here. *Id.* It reasons that, "[i]n the context of products liability, downstream sales to consumers can support personal jurisdiction because they bear on 'the relationship among the defendant, the forum, and the litigation.'" *Id.* at 576 (quoting *Walden*, 571 U.S. at 284). In particular, where the complaint alleges that the development of a product harms consumers, a defendant's efforts "to reach

5

consumers in a forum state . . . create[] a relationship with the forum state that has special relevance to the litigation at issue." *Id.*

Under the version of the stream-of-commerce theory applied by the Seventh Circuit, "as long as a participant in the stream of commerce is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *B.D. ex rel. Myer v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 861 (7th Cir. 2024) (quoting *Asahi*, 480 U.S. at 117 (Brennan, J., concurring)); *see also Morris v. Daimler Trucks N.A., LLC*, No. 20-cv-246-JPG, 2020 WL 4436330, at *4 (S.D. Ill. Aug. 3, 2020) ("[I]f a products liability defendant in a court in Illinois is aware and expects its product to be marketed and regularly sold in Illinois in the stream of commerce, it will be subject to personal jurisdiction in Illinois."). Thus, the Seventh Circuit has "found personal jurisdiction in a products liability suit because a defendant sold fireworks to a middleman 'with the knowledge that its fireworks would reach Illinois consumers in the stream of commerce.'" *JST Corp.*, 965 F.3d at 576 (quoting *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946–47 (7th Cir. 1992)). Similarly, here, BMW AG's exclusive U.S. distributor, BMW NA, serves as BMW AG's intermediary with respect to the U.S. market. Unquestionably, BMW AG knows that BMW NA makes substantial sales of its vehicles to the U.S. market as the U.S. accounts for the second largest share of BMW AG's global sales, and BMW AG has expressly referred to the U.S. market as its "second home." (Pl.'s Opp'n, Ex. 1, Dkt. No. 29-1.) The question, then, is whether BMW AG also puts its vehicles into the U.S. stream of commerce with the knowledge and expectation that those vehicles would be marketed and sold to customers in Illinois.

To show BMW AG's knowledge that its vehicles would be marketed and sold to customers in Illinois, Odegaard introduces the report of a global-supply chain expert who

6

reviewed import records from between January 2012 and June 2014[2] and found that BMW AG made 1,327 total shipments of BMW vehicle parts (or, in some cases, entire vehicles) to addresses in Illinois. (Pl.'s Opp'n, Ex. 3, Expert Report of Rosemary Coates ¶ 29, Dkt. No. 29-3.) That finding demonstrates BMW AG's awareness that its vehicles were being sold to and used by customers in Illinois, since there would be no need to send BMW parts to a State where those vehicles were not regularly driven.

In response, BMW AG tries to undermine the expert's conclusions by pointing to flaws in the evidence upon which she relied. First, BMW derides the expert's evidence as "illegible." Odegaard's expert obtained her evidence from a database commonly used in import and export industries and, certainly, Odegaard faced some difficulty in cleanly presenting the data in a format that could be attached to his opposition brief. But that does not mean the evidence is wholly unreliable, and BMW AG does not make that contention. BMW AG then goes on to cherry-pick certain entries indicating a shipment to Illinois and give reasons why that shipment might not have gone to Illinois at BMW AG's direction. However, it is well-established that the Court must not "unduly scrutinize[] the quality of the expert's data," as "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). Moreover, on a Rule 12(b)(2) factual challenge, factual disputes are resolved in favor of the plaintiff. Thus, disputes regarding the evidence underlying the expert report are properly resolved in Odegaard's favor. *See, e.g.*,

---

[2] The most pertinent evidence of BMW AG's contacts with Illinois for the purposeful availment inquiry here will predate Odegaard's purchase of the BMW. Odegaard does not allege when he bought his BMW, but there is evidence that it was first purchased in 2014 (although it is unclear whether Odegaard was the original purchaser, as there was a second sale of that vehicle in 2017). (BMW AG's Mot. to Dismiss, Ex. D, Dkt. No. 21-4.) Thus, the Court focuses mainly on BMW AG's contacts from 2014 and earlier.

*Neterval-Quiel v. CMC SRL,* No. 21-cv-1279-bhl, 2022 WL 4131921, at *4 (E.D. Wis. Sept. 12, 2022) ("'[I]n evaluating whether' a prima facie case of personal jurisdiction has been established, 'the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" (quoting *Purdue Rsch. Found.*, 338 F.3d at 782)).

Odegaard also offers evidence of efforts to promote the BMW brand that were directly targeted at Illinois. In particular, press releases published on BMW AG's websites tout an annual golf tournament known as the BMW Championship that was held at golf clubs in Illinois in 2007, 2009, 2010, 2011, and 2013. (Pl.'s Opp'n, Exs. 28, 31–34, Dkt. Nos. 29-26, 29-29–29-32.) The BMW Championship also doubles as a fundraiser, with the proceeds being donated to an Illinois-based charity. (Pl.'s Opp'n Ex. 10, Dkt. No. 29-10.) Although BMW AG downplays the BMW Championship as promoting the BMW brand (rather than BMW AG itself), BMW AG cannot dissociate itself from the brand inextricably linked with the vehicles it designs and manufactures. Marketing the BMW brand in Illinois reveals an intent specifically to cultivate the Illinois market. And the fact that the tournament is promoted on BMW AG's website demonstrates BMW AG's awareness of those efforts. *See, e.g.*, *Kreuziger Drainage LLC v. Inter-Drain Sales BV*, No. 21-cv-0908-bhl, 2022 WL 1136761, at *2 (E.D. Wis. Apr. 18, 2022) (finding that the defendant manufacturer purposefully availed itself of the Wisconsin market when "[i]t knew the regional scope of [its distributor's] sales efforts and reaped the benefits of those efforts"). Viewed together, the Court finds that Odegaard's evidence sufficiently shows BMW AG's awareness that a significant number of the vehicles it delivered to BMW NA would be marketed and sold to customers in Illinois.

Having shown that BMW AG purposefully availed itself of doing business in Illinois under the stream-of-commerce theory, Odegaard must further show that his alleged injury arose

8

from or related to BMW AG's forum-related activities. "In products liability suits like this one, that is not difficult." *Neterval-Quiel*, 2022 WL 4131921, at *5. As discussed above, the Seventh Circuit has explained that, in the products liability context, the defendant creates a relationship to the forum state relevant to the litigation simply by reaching out to consumers in that state.

      Notably, the Supreme Court has held that there need not be a strict causal relationship between a defendant's forum-state contacts and the litigation. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). Rather, the "most common formulation of the rule demands that the suit 'arise out of **or relate to** the defendant's contacts with the forum.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* Here, the promotion of the BMW brand in Illinois relates to Odegaard's claims because he might never have even bought a BMW but for those efforts. Moreover, BMW AG's shipments of auto parts to Illinois relate to this litigation because those shipments ensure that local dealers and mechanics have the necessary supplies to service BMWs, thereby making driving a BMW in Illinois more convenient. *Id.* at 365 ("[T]he company distributes replacement parts both to its own dealers and to independent auto shops in the two [forum] States. Those activities . . . make Ford money. And by making it easier to own a Ford, they encourage Montanans and Minnesotans to become lifelong Ford drivers."). And because Odegaard was injured when his BMW's allegedly defective airbag system malfunctioned in Illinois, he has shown that his injury arose from or related to BMW AG's activities in Illinois. *See Kreuziger*, 2022 WL 1136761, at *3 ("[The

defendant's] allegedly defective product harmed [the plaintiff] in Wisconsin, the state where it filed its lawsuit. Thus, . . . the causal element is satisfied.").

Finally, BMW AG argues that even if it had sufficient litigation-related contacts with Illinois, subjecting it to personal jurisdiction in this Court would not comport with fairness and justice. In evaluating fairness, the Court considers "the burden on the defendant, the interests of the plaintiff and the forum state, the interest in efficient resolution of the dispute, and the shared interest of states in furthering certain substantive social policy." *B.D.*, 91 F.4th at 862. Given that it is a German company, BMW AG contends that this Court must consider "the procedural and substantive policies of other nations [*i.e.*, Germany] whose interests are affected by the assertion of jurisdiction" by this Court. *Asahi*, 480 U.S. at 115. Yet BMW AG does not specify what specific interest of Germany would be detrimentally impacted by subjecting BMW AG to jurisdiction in Illinois. On the other hand, Illinois has a substantial interest in ensuring that there are remedies available for its citizens who have been injured by a defective product. *Dehmlow*, 963 F.2d at 945–46. Further, BMW AG is a major automobile manufacturer that earns substantial revenue from sales of its vehicles in the U.S., including in Illinois. BMW AG cannot credibly claim that it is unfamiliar with the Illinois court-system, as it has been a plaintiff in

10

multiple lawsuits brought in Illinois courts. (Pl.'s Opp'n, Exs. 6–8, Dkt. Nos. 29-6–29-8.) Consequently, the Court concludes that BMW AG is fairly subject to jurisdiction in Illinois.

## CONCLUSION

For the foregoing reasons, BMW AG's motion to dismiss for lack of personal jurisdiction (Dkt. No. 27) is denied.

ENTERED:

Dated:  March 24, 2025

Andrea R. Wood
United States District Judge